CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
November 24, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ E. Jones
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **IN RE DELTA DENTAL OF VIRGINIA LITIGATION** | ) ) ) ) ) | **Civil Action No. 7:25-CV-00873**<br><br>**By: Hon. Robert S. Ballou**<br>**United States District Judge** |

**MEMORANDUM OPINION**

Plaintiffs Anna Livingston, Stephanie Harvey, Tierra Harrington, Leif Jones, Tracy Moler, Linda Goodrich, Sandra Young, and Megan Seay, individually and on behalf of all others similarly situated, bring this class action against Defendant Delta Dental of Virginia. Plaintiffs allege that Delta Dental failed to properly secure Class Members' personally identifiable information and protected health information (collectively, "Private Information"). Dkt. 44 ¶ 1. Defendants moved to dismiss Plaintiffs' Consolidated Class Action Complaint, arguing that Plaintiffs lack standing, abstention is appropriate under the Class Action Fairness Act's discretionary exception,[1] and, alternatively, that Plaintiffs fail to state a claim. Dkts. 48–49.

At least one named Plaintiff alleges actual misuse of her Private Information, a cognizable injury that is fairly traceable to the data breach. Therefore, Plaintiffs have standing to pursue their claims for damages. Plaintiffs lack standing to pursue injunctive relief because they have not asserted that, even if Delta Dental is the target of another data breach, they are at imminent risk of additional disclosure of their Private Information. After considering the discretionary exception factors, the Court exercises its discretion and declines to abstain from exercising jurisdiction. Plaintiffs plausibly allege negligence and breach of implied contract

[1] The discretionary exception is variably referred to as the home state exception, the discretionary exception, and the interests of justice exception. For clarity, I refer to it as the discretionary exception in this opinion.

theories of recovery, but fail to state a claim for negligence per se, unjust enrichment, and violations of the Virginia Consumer Protection Act, and, therefore, Defendant's motion to dismiss is granted in part and denied in part.

## I. Background

I accept the following facts as true for the purpose of the motion to dismiss and draw all reasonable inferences in Plaintiffs' favor. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). Plaintiffs allege that Delta Dental failed to adequately protect their Private Information, which allowed unauthorized individuals to access and steal their information from Delta Dental's network and systems. They bring this putative class action alleging state law claims. For relief, Plaintiffs seek certification of the class, monetary, injunctive, and declaratory relief, and all reasonable costs and fees.

Delta Dental is a dental insurer operating in Virginia. Dkt. 44 ¶ 2. At all times relevant, Plaintiffs received services from Delta Dental. *Id.* ¶¶ 134, 150, 165, 181, 202, 218, 233, 248. To access Delta Dental services, customers must provide their Private Information, which Delta Dental electronically stores. *Id.* ¶¶ 3, 30. In April 2025, Delta Dental became aware that an unauthorized actor accessed its network and systems and exfiltrated Private Information of 145,918 customers, including that of Plaintiffs. *Id.* ¶¶ 4, 7. Plaintiffs allege that this data breach caused cognizable injury and bring this action individually and on behalf of all those whose information was similarly exposed.

Delta Dental first became aware of the data breach on April 23, 2025. *Id.* ¶ 32. The data breach occurred between March 21, 2025, and April 23, 2025, and included exposure of class members' individual health insurance policy numbers and social security numbers. *Id.* ¶ 33. Plaintiffs allege that other information may also have been exposed. *Id.* ¶ 6. In November 2025,

Delta Dental sent a notice to those affected. *Id.* ¶ 33. The notice does not explain the exact date of the data breach or whether Delta Dental contained the cybersecurity threat. *Id.*

Plaintiffs allege that the data breach occurred because Delta Dental did not implement adequate security controls to protect their Private Information. *Id.* ¶¶ 44, 50. As evidence of this inadequacy, Plaintiffs allege that Delta Dental failed to comply with the FTC's guidelines and industry standards for data security. *Id.* ¶¶ 92–97, 116. Private Information, particularly Social Security numbers, is of high value to criminals. *Id.* ¶¶ 74. Once stolen, Social Security numbers are not easily changed and may be used by cybercriminals to commit identity theft and financial fraud. *Id.* ¶ 73–74. Unlike a credit card or driver's license, Social Security numbers are difficult to change. *Id.* ¶ 75. Plaintiffs allege that the risk of misuse or private information is high because hackers specifically targeted Plaintiffs' Private Information. *Id.* ¶ 35. In its notification, Delta Dental offered Plaintiffs credit and identity monitoring, which Plaintiffs allege "establishes that Plaintiffs' and Class Members' sensitive Private Information was in fact affected, accessed, compromised, and exfiltrated from Defendant's computer network." *Id.* ¶ 64. Plaintiffs allege that Delta Dental improperly delayed in failing to notify Plaintiffs of the data breach until nearly seven months after it occurred. *Id.* ¶¶ 37–38.

Plaintiffs allege that Delta Dental's failure to adequately protect their Private Information caused compensable injuries. *Id.* ¶ 132. These injuries include theft and misuse of personal information, imminent risk of fraud and identity theft, inadequate notification of the breach, improper disclosure of Private Information, loss of privacy, mitigation costs, deprivation of value of Private Information, and emotional distress. *Id.* One named plaintiff, Plaintiff Harrington, also claims that fraudulent charges were made to her account because of the data breach. *Id.* ¶¶ 193–94. She also alleges that she had to spend time closing her compromised accounts and has

received an excessive number of spam calls on the cell phone number she provided to Delta Dental. *Id*. ¶¶ 192–94. Plaintiffs also allege that they are entitled to injunctive and declaratory relief announcing Delta Dental's insufficient security measures and requiring implementation of more protective policies and systems. *Id*. ¶¶333–37.

Plaintiffs assert the following cause of action:

**Count I**: Negligence
**Count II**: Negligence Per Se
**Count III**: Breach of Implied Contract
**Count IV**: Unjust Enrichment
**Count V**: Injunctive/Declaratory Relief
**Count VI**: Violation of the Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196, et seq.

*Id*. ¶¶ 275–353. Virginia law governs this diversity claim. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Delta Dental moved to dismiss the action. Dkts. 48–49. Delta Dental provides three arguments in support of its motion to dismiss. First, Delta Dental argues that the discretionary home-state exception to class action jurisdiction applies, so this Court should abstain from exercising jurisdiction. Second, Delta Dental argues that Plaintiffs have failed to allege adequate injury and therefore lack standing. Finally, in the alternative, Delta Dental argues that Plaintiffs fail to state a claim.

## II. Legal Standard

Delta Dental asserts a variety of defenses in their motions to dismiss, including lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests a district court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the plaintiff, as the party asserting the court's jurisdiction."

*Brooks v. Branham*, No. 6:22-cv-00033, 2023 WL 3761183, at *5 (W.D. Va. June 1, 2023) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted).

"A rule 12(b)(6) motion tests the sufficiency of a complaint; it does not, however, 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King*, 825 F.3d at 214 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To survive a motion to dismiss, the complaint "must contain 'enough facts to state a claim for relief that is plausible on its face'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## III. Analysis

### A. <u>Standing</u>

As a threshold matter, this Court must assure itself of subject matter jurisdiction. That a plaintiff has standing to sue in federal court is "an essential and unchanging part of the case or controversy requirement of Article III." *Lujan*, 504 U.S. at 560. Requiring standing makes certain that the party in front of us is the "proper party to invoke judicial resolution of the dispute." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). The "irreducible constitutional minimum of standing" requires a plaintiff to show (1) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury would likely be redressed by judicial relief. *Id.* "[A] plaintiff must demonstrate

standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

Delta Dental argues that Plaintiffs Livingston, Young, Harvey, Jones, Moler, Goodrich, and Seay fail to allege injury-in-fact. And, although apparently conceding that Plaintiff Harrington alleges injury-in-fact, Delta Dental argues that her injury is not fairly traceable to its conduct.

*1. Injury-In-Fact*

The first element of Article III standing, injury-in-fact, requires a plaintiff to show "an invasion of a legally protected interest that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (quoting *Lujan*, 504 U.S. at 560). "[T]o establish standing for a class as a whole, we need not examine the injuries alleged by all Named Plaintiffs. For purposes of justiciability, the Constitution merely requires '[a]t least one plaintiff have standing to seek each form of relief requested in the complaint.'" *Jonathan R. by Next Friend Dixon v. Morrisey*, 178 F.4th 139, 161 (4th Cir. 2026) (quoting *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017)).

Plaintiffs' asserted compensable injuries can be generally classified into eight categories:

1. Violation of the right to privacy, Dkt. 44 ¶¶ 141, 155, 171, 190, 193–94, 209, 223, 238, 253;
2. Theft of Private Information, *id.* ¶¶ 138, 153, 169, 185, 206, 221, 236, 251;
3. Lost or diminished value of Private Information, *id.* ¶¶ 142, 157, 173, 191, 210, 225, 240, 255;
4. Loss of benefit of the bargain, *id.* ¶ 13;
5. Mitigation costs[2], *id.* ¶¶ 139, 143, 154, 158, 170, 174, 186, 195, 207, 211, 222, 226, 237, 241, 252, 256;

[2] Mitigation costs encompass loss of time addressing the risks of the breach and out-of-pocket costs associated with the risks of the breach, including the cost of credit monitoring.

6. Future imminent risk of fraud and identity theft, *id.* ¶¶ 140, 145, 156, 160, 172, 176, 187, 197, 208, 213, 224, 228, 239, 243, 254, 258; and
7. Emotional distress, *id.* ¶¶ 13, 132, 144, 146, 159, 161, 175, 177, 196, 198, 212, 214, 227, 229, 242, 244, 257, 259.

Dkt. 44 ¶ 13. Several of these injuries are clearly insufficient to confer standing. Recently, the Fourth Circuit held that a plaintiff does not allege injury-in-fact caused by a data breach by alleging (1) increased risk of misuse of Private information; (2) mitigation costs; or (3) emotional distress. *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 428–34 (4th Cir. 2025). Therefore, Plaintiffs' fifth, sixth, and seventh claims of injury are insufficient to confer standing.

As to Plaintiffs' second asserted injury, it is settled law that theft of Private Information, without evidence of misuse or that the information was specifically targeted, is insufficient on its own to confer standing. *Beck v. McDonald*, 848 F.3d 262, 274–75 (4th Cir. 2017). Plaintiffs' second asserted injury does not independently allege injury-in-fact.

Loss of value of private information—Plaintiffs' third asserted injury—also cannot confer standing because courts in this Circuit have held that an individual's Private Information does not have independent monetary value. *Wilkins v. Eng. Constr. Co., Inc.*, 823 F. Supp. 3d 614, 621 (W.D. Va. 2026) ("Presumably, Plaintiffs would not sell their own Social Security numbers to cybercriminals who, in turn, would use that information to cause Plaintiffs' financial harm. Therefore, it is entirely unclear how Plaintiffs' Social Security and driver's license numbers have legitimate monetary value that could be diminished by public disclosure."); *see also Podroykin v. Am. Armed Forces Mut. Aid Ass'n*, 634 F. Supp. 3d 265, 272 (E.D. Va. 2022). Therefore, Plaintiffs' third asserted injury cannot confer standing.

Plaintiffs' fourth asserted injury, loss of benefit of the bargain, is similarly insufficient to confer standing in this context. "[E]ven courts willing to entertain this theory of standing consistently reject this theory in data breach cases where plaintiffs have not alleged that the value

of the good or services they purchased was diminished as a result of the data breach." *Stuart v. Kyocera AVX Components Corp.*, 769 F. Supp. 3d 476, 490 (D.S.C. 2025) (citing *Podroykin v. Am. Armed Forces Mut. Aid Assoc.*, 634 F. Supp. 3d 265, 272 (E.D. Va. 2022)). In *Podroykin*, the Eastern District of Virginia applied this theory to an insurer's data breach that revealed customer data. 634 F. Supp. 3d at 272. Given this precedent, Plaintiffs' fourth asserted injury cannot confer standing.

Therefore, the only asserted injury that could confer standing is loss of privacy. In a growing body of case law addressing standing in data breach cases, the Fourth Circuit has found that a plaintiff properly asserts injury-in-fact due to loss of privacy if she alleges actual misuse of Private Information. *Compare Beck*, 848 F.3d at 274–75 (holding that mere theft of private information, without allegations of misuse or specific targeting of private information, is insufficient to demonstrate injury in fact) *with Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 622 (4th Cir. 2018) ("The Plaintiffs have been concretely injured by the data breach because the fraudsters used—and attempted to use—the Plaintiff's personal information."). The threat of loss of privacy may also be sufficiently imminent to confer standing when there is actual publication of private information. *Holmes*, 156 F.4th at 425–26 (holding that Plaintiffs who alleged that their driver's license numbers were listed on the dark web have demonstrated injury-in-fact because that injury was analogous to the common law tort of public disclosure).

Plaintiffs Livingston, Harvey, Jones, Moler, Goodrich, Young, and Seay do not allege actual misuse or publication of their information. Rather, they each allege that they believe their information is likely to have been sold or published on the Dark Web. Dkt. 44 ¶¶ 42, 127, 138, 153, 169, 185, 206, 221, 236, 251. In *Holmes*, the Fourth Circuit held that absent actual misuse

or publication, theft of Private Information is insufficient to confer standing. 156 F.4th at 430. Therefore, Plaintiffs Livingston, Harvey, Jones, Moler, Goodrich, Young, and Seay lack standing to assert their claims.

Plaintiff Harrington stands apart from the other named plaintiffs because she alleges actual misuse of her private information evidenced by fraudulent bank charges of $4,000 in May 2025 and $69.99 in January 2026. Dkt. 44 ¶¶ 193–94. Harrington also alleges an increased number of spam calls on the cell phone provided to Delta Dental. *Id.* ¶ 192. As Delta Dental apparently concedes, an allegation of misuse of Private Information is sufficient to demonstrate injury-in-fact. *See* Dkt. 49 at 12. Harrington asserts injury in fact, so the Court turns to whether her injury is fairly traceable to Delta Dental's conduct. Only one plaintiff need assert a cognizable injury to meet the first standing requirement.[3] *See Carolina Youth Action Project; D.S. by & through Ford v. Wilson*, 60 F.4th 770, 778 (4th Cir. 2023) ("We conclude two of the named plaintiffs . . . have standing to seek each form of relief requested in the current complaint and granted by the district court. Accordingly, we need not consider whether the other plaintiffs have standing or if their claims are otherwise justiciable.").

2. *Fairly Traceable*

An injury is fairly traceable to a data breach when "it is both plausible and likely that a breach . . . resulted in the fraudulent use of the Plaintiffs' personal information." *Hutton*, 892 F.3d at 623. In *Hutton*, the Fourth Circuit found that the plaintiffs' receipt of unsolicited Chase Amazon Visa credit cards was fairly traceable to the data beach because the defendant was the

---

[3] Although "[e]very class member must have Article II standing in order to recover individual damages," the determination of each class member's entitlement to relief is not before the Court on a jurisdictional challenge. *Holmes*, 156 F.4th at 420 n.2 (quoting *TransUnion v. Ramirez*, 594 U.S. 413, 431 (2021)).

only common source of the exposed personal information. *Id*. Traceability is a lower standard than is required for tort causation. *Id*. However, the plaintiff must link the injury to the compromised information. *Holmes*, 156 F.4th at 421 n.3. Recently, the Fourth Circuit addressed Article III causation in cases where a causal relationship depends upon the decision of an independent third party. *See Lowy v. Daniel Defense*, LLC, 167 F.4th 175, 195 (4th Cir. 2026). In that context, the Fourth Circuit emphasized that the Article III causation is "relatively modest," particularly at the "motion-to-dismiss stage." *Id*. (citing *DiCocco v. Garland*, 52 F.4th 588, 592 (4th Cir. 2022)).

Plaintiff Harrington alleges the data breach exposed her information to criminals, who then used that information to make fraudulent charges to her bank account. Dkt. 44 ¶¶ 193–94. Harrington also alleges that she received an "excessive number of spam calls" on the cell phone number provided to Delta Dental, which she believes is linked to the data breach. *Id*. ¶ 192. Delta Dental argues that Harrington's bank information was not exposed by the data breach, so she fails to allege how exposure of her social security number and insurance number were used in that fraudulent act. Dkt. 49 at 13. Harrington asserts three arguments to support traceability. First, Harrington alleges that she is not aware of any other data breach that could have compromised her private information. Dkt. 44 ¶¶ 188–89. Second, she argues that the temporal connection between the data breach and the fraud creates a reasonable inference that the data breach was the cause. Finally, Harrington relies on the increased risk caused by exposure of a Social Security number, as compared with other Private Information.

Considering the modest standard applied to determining Article III causation at the motion to dismiss stage, I find that Plaintiff Harrington has adequately alleged that the fraudulent bank charges are "fairly traceable" to Delta Dental. First, in *Hutton*, the Fourth Circuit found that

the plaintiffs' injuries were fairly traceable to the defendant's data breach, even though the defendant did not explicitly admit that such a breach occurred. 892 F.3d at 623. The Fourth Circuit reasoned that the defendant was the only "common source" that collected the exposed Private Information and other organization the plaintiffs had in common "investigated and confirmed their databases have not been breached." *Id*. Although the connection in this case is arguably weaker, because Harrington is the only named plaintiff who experienced fraud, she alleges that she has not received notice of another data breach and has not previously been a victim of fraud. Dkt. 44 ¶¶ 188–89. And, like the *Hutton* plaintiffs, Harrington provides evidence that another piece of information (her phone number) provided to Delta Dental was also exposed. *Id*. ¶ 192. Taken together, these connections create a reasonable inference that the data breach exposed both pieces of information.

Second, the temporal connection between the data breach and the fraudulent charges to Harrington's bank supports a finding that the fraud is fairly traceable to the data breach. Specifically, the breach occurred between March 21, 2025, and April 23, 2025. Dkt. 44 ¶ 32. Harrington first became a victim of fraud in May 2025, and again in January 2026. *Id*. ¶¶ 193–94. In the Fourth Circuit, a plaintiff makes a prima facie case of causation for a retaliation[4] claim under Title VII by showing that "the gap between the protected activity and the adverse employment action . . . [is] no longer than two months." *Barnhill v. Bondi*, 138 F.4th 123, 132 (4th Cir. 2025) (citations omitted). Traceability is a lower standard than tort causation. *Hutton*, 892 F.3d at 623. Although the temporal connection to show tort causation incorporates different considerations, this comparison demonstrates that the temporal connection between the data

[4] "Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

breach and the fraud supports a conclusion that the allegations of traceability are sufficient at this stage of the pleadings.

Finally, exposure of a Social Security number implicates significant fraud risks beyond use of the number for identity theft. Plaintiffs allege that "each time an individual's Social Security number is compromised, 'the potential for a thief to illegitimately gain access to *bank accounts*, credit cards, driving records, tax and employment histories and other private information increases.'" Dkt. 44 ¶ 72 (citations omitted) (emphasis added). In several recent cases involving data breach exposure of Social Security numbers, Courts in the Fourth Circuit have held that they are "ultimately not persuaded by Defendant's argument that fraudulent activity related to credit cards and bank accounts severs traceability because that information was not directly disclosed during the Data Breach." *Gordon v. Zeroed-In Tech., LLC*, No. CV 23-3284, 2025 WL 936415, at *10 (D. Md. Mar. 26, 2025) (citations omitted); *see also Midkiff v. Shoe Show, Inc.*, No. 1:24-CV-858, 2026 WL 880210, at *7 (M.D.N.C. Mar. 30, 2026). These conclusions largely stem from the "highly sensitive" nature of Social Security numbers. *See Ostergren v. Cuccinelli*, 615 F.3d 263, 279 (4th Cir. 2010) ("Given the serious privacy concerns and potential harm stemming from SSN dissemination, Virginia's asserted interest in protecting individual privacy by limiting SSNs' public disclosure may certainly constitute 'a state interest of the highest order.'" (citations omitted)). Therefore, because the data breach exposed Harrington's Social Security number, not a less sensitive piece of Private Information, the fact that her bank accounts were not compromised in the breach does not sever traceability in this case.

At this stage, considering the totality of the circumstances, the fraudulent charges are fairly traceable to the data breach. To show traceability, the allegations are construed in the light

most favorable to Plaintiffs. In that posture, injury is fairly traceable to the defendant's conduct if "[the defendant] was a plausible source of the Plaintiff's personal information." *Hutton*, 892 F.3d at 623. Harrington's pleadings plausibly state the inference that a criminal acquired her Social Security number through the data breach and either used it directly to make fraudulent charges to her bank account or used it indirectly to obtain her banking and other personal information. Certainly, discovery may reveal that the fraudulent charges are insufficiently traceable to Delta Dental. But, considering the allegations in the Complaint, Harrington has standing to bring her claims for damages.

### 3. *Injunctive and Declaratory Standing*

Plaintiffs also seek injunctive and declaratory relief. Specifically, Plaintiffs seek a declaration that Delta Dental's existing security measures are insufficient and asks that the Court direct Delta Dental to implement certain security measures. The plaintiff must have standing for all forms of relief sought. *Friends of the Earth*, 528 U.S. at 185. Plaintiffs assert that they are entitled to injunctive and declaratory relief due to the risk of future breaches at Delta Dental. Dkt. 44 ¶¶ 148, 163, 179, 200, 216, 231, 246, 261. I disagree. In *Holmes*, the plaintiffs requested nearly identical relief to that requested in this case: that the court "declare that Elephant's security is unlawfully shoddy and enjoin Elephant to fix it." 156 F.4th at 432. The Fourth Circuit held that Plaintiffs could not seek injunctive or declaratory relief because allegations of insufficient data security, without more, do not create an imminent risk of a future data breach. *Id*. at 432–33. In *City of Los Angeles v. Lyons*, the Supreme Court decreed that the fact that a plaintiff suffered a past injury does not provide standing for injunctive relief absent allegations that the plaintiff specifically had a risk of suffering future harm. 461 U.S. 95, 108 (1983). As the Fourth Circuit noted in *Holmes*, that proposition applies to data breach cases. 156 F.4th at 433

(holding that general allegations of inadequate security measures fail to show imminent injury, because those allegations do not suggest that hackers would target the defendant specifically or that these plaintiffs' information would be compromised). Therefore, Plaintiffs do not have standing to seek injunctive or declaratory relief.

B. Discretionary Home-State Exception

The Parties agree that this Court has original jurisdiction over this matter pursuant to CAFA. Under CAFA, a federal district court has original jurisdiction if "(1) the putative class has more than 100 members (numerosity); (2) the amount in controversy exceeds five million dollars, exclusive of interest and costs (amount in controversy); and (3) the parties are minimally diverse in citizenship (minimal diversity)." *Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 330 (4th Cir. 2019). Minimal diversity requires that one class member be a citizen of a different state from any defendant. 28 U.S.C. § 1332(d)(2)(A).

Delta Dental argues that, although this Court has original jurisdiction, the discretionary exception to jurisdiction applies, so the Court should decline to exercise jurisdiction. Dkt. 49 at 8–9. Plaintiffs dispute the applicability of the discretionary exception and argue that Delta Dental has waived the argument that the exception applies. Dkt. 54 at 12–18.

The statutory exceptions to CAFA ensure that federal jurisdiction attaches only to interstate class actions of national importance. *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013). Therefore, "[e]ven where a district court has original jurisdiction pursuant to CAFA, however, it can—or must—abstain from exercising that jurisdiction in certain circumstances." *Skyline Tower Painting, Inc. v. Goldberg*, 148 F.4th 209, 220 (4th Cir. 2025). The applicability of the exception does not deprive the Court of subject matter jurisdiction. *Id*. at 226; *Scott v. Cricket Communications, LLC*, 865 F.3d 189, 196 n.6 (4th Cir. 2017) ("[J]urisdictional terms are those

that Congress 'clearly states as threshold limitations on a statute's scope.'" (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006) (cleaned up))). The plain language of the statute does not limit the application of CAFA exceptions to removal cases. *Ellis v. Montgomery Cnty.*, 267 F. Supp. 3d 510, 515–16 (E.D. Pa. 2017) (collecting cases). Therefore, I join Judge Moon's decision in *Wilkins* in finding that the discretionary exception may be applied to cases originally filed in federal court. 823 F. Supp. 3d at 622 n.4.

Under the discretionary exception, "[a] district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(3). If the citizenship requirement is met, the Court is directed to consider six factors to determine if abstention is appropriate:

> (A) whether the claims asserted involve matters of national or interstate interest;
>
> (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
>
> (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
>
> (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
>
> (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
>
> (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. § 1332(d)(3)(A)–(F). These factors "help assess whether the claims at issue are indeed local in nature." *Wilkins*, 823 F. Supp. 3d at 623 (quoting S. Rep. No. 109-14, at 28 (2005)[5]). The party seeking remand or dismissal must show that an exception to class action jurisdiction applies by a preponderance of the evidence. *Goldberg*, 148 F.4th at 221–22 (collecting cases).

*1. Timeliness*

Plaintiffs first argue that Delta Dental waived application of the discretionary exception by failing to raise it in a reasonable time, because "[t]his case was first filed on December 1, 2025." Dkt. 54 at 5. Plaintiffs argue that CAFA exceptions must be raised in a reasonable time, and a five-month delay is unreasonable. Plaintiffs correctly assert that CAFA exceptions must be raised within a reasonable time. *Goldberg*, 148 F.4th at 217 n.8. In this case, I find that Delta Dental raised the discretionary exception within a reasonable time. On February 26, 2026, this Court ordered that the six original cases be consolidated into the instant case. Dkt. 16. The order granted Plaintiffs thirty days to file a consolidated class action complaint. *Id*. at 5. Plaintiffs filed their Consolidated Class Action Complaint on March 30, 2026. Dkt. 44. "Because a properly filed amended complaint supersedes the original one and becomes the operative complaint in the case, it renders the original complaint 'of no effect.'" *Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017) (quoting *Young v. City of Mt. Ranier*, 238 F.3d 567, 573 (4th Cir. 2001)).

[5] The Fourth Circuit has cast doubt on the Senate Report because it was issued 10 days after CAFA was signed into law. *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 177 (4th Cir. 2011) *overruled on other grounds by Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161 (2014). However, this Court and the Supreme Court have used the Senate Report to determine legislative intent. *Wilkins*, 823 F. Supp. 3d at 623; *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Despite its late issuance, the Report was submitted to the Senate while that body was still considering the CAFA. *Speed*, 872 F.3d at 1129. Therefore, although "post hoc statements of a congressional Committee are not entitled to much weight," *Weinberger v. Rossi*, 456 U.S. 25, 35 (1982), I find that the Senate Report is probative of congressional intent.

Delta Dental filed its motion to dismiss raising the discretionary exception on April 27, 2026, 28 days after filing of the consolidated class action complaint. Dkts. 48–49. Therefore, because Delta Dental raised the discretionary exception within 30 days of the filing of the operative complaint, the argument is timely.

2. *Citizenship Requirement*

As a threshold requirement to apply the discretionary exception, Delta Dental must establish by a preponderance of the evidence that "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants" are citizens of Virginia. 28 U.S.C. § 1332(d). Although residency does not establish citizenship for the purposes of subject matter jurisdiction, the Fourth Circuit recently held that evidence of residency in a state creates a rebuttable presumption of citizenship in that state. *Goldberg*, 148 F.4th at 226–27.

In this case, Delta Dental is a Virginia corporation with its principal place of business in Virginia. Dkt. 44 ¶ 28. Therefore, Delta Dental is a citizen of Virginia. The proposed class is "[a]ll persons residing in the United States whose Private Information was compromised in the Data Breach." *Id.* ¶ 263. Delta Dental has provided evidence that 46% of the proposed class resides in Virginia. Specifically, Delta Dental identified 145,918 people affected by the data breach. Dkt. 48-2 ¶ 3. Of those 145,918 individuals, Delta Dental obtained last known addresses for 104,584. *Id.* ¶ 4. Before mailing notification of the data breach to the 104,584 individuals with last known addresses, Delta Dental reconciled the address list with the national change of address database, which is managed by the United States Postal Service. *Id.* ¶ 6. According to that reconciliation, 67,156 of the 104,584 individuals with known addresses were Virginia

residents. *Id.* ¶ 7. Therefore, Delta Dental has provided evidence sufficient for a rebuttable presumption that 46% of the proposed class is a citizen of Virginia.

Plaintiffs first argue that Delta Dental's evidence of Virginia mailing addresses is unpersuasive because Delta Dental reconciled its customer address list "approximately a year ago" and "many class members may have left the state after that point but before the filing of the complaint." Dkt. 54 at 14 n.2. Plaintiffs also argue that although a district court may adopt a rebuttal presumption that residency demonstrates citizenship, it does not have to. *Id.* at 14 n.1. Finally, Plaintiffs assert that the 41,334 individuals without known addresses may all be citizens of other states. *Id.* at 13–14.

Plaintiffs' conclusory attempts to rebut the presumption of citizenship are unavailing. First, the assertion that some class members may have left the state after Delta Dental reconciled its address list lacks evidentiary support. Second, although the Fourth Circuit has not mandated that this Court adopt the rebuttable presumption, this Court has recently applied it to a similar data breach case. *See Wilkins*, 823 F. Supp. 3d at 622–25. Even absent that recent precedent, sound reasoning supports the presumption in applying CAFA exceptions. The presumption allows the citizenship inquiry for CAFA exceptions to be "practical and reasonable," as much of the information about the class is unknown at this stage of litigation. *Goldberg*, 148 F.4th at 226 (citations omitted); *see also, Bryant v. Geico Cas. Co.*, No. CV 22-3310, 2023 WL 8437228, at *6 (D. Md. Dec. 5, 2023) ("To deny remand here, as Defendants urge, simply because Plaintiffs have not provided individualized proof that each member of the proposed class possesses the requisite domiciliary intent to establish citizenship would vitiate any practicality or reasonableness that is to be applied to the inquiry of citizenship under CAFA's exceptions."). Third, Delta Dental provides evidence of Virginia residency for 46% of the class, which is more

than the required 33.33% threshold for the discretionary exception. Therefore, the citizenship of the proposed class members who did not receive mailed notice is irrelevant for the citizenship requirement. For the purpose of the discretionary exception, Delta Dental has established that more than one-third and less than two-thirds of the proposed class are citizens of Virginia.

*3. Section 1332(d)(3) Factors*

Because Plaintiffs failed to rebut Delta Dental's evidence that establishes a presumption of citizenship, the Court must consider the factors outlined in § 1332(d)(3) to determine if abstention is appropriate in this case. The discretionary exception, like all exceptions to CAFA jurisdiction, is designed to ensure that only truly interstate actions are addressed in federal court. *Preston v. Tenet Healthsystem Memorial Medical Center, Inc.*, 485 F.3d 804, 823 (5th Cir. 2007). "[T]he district court's discretion is not unfettered but must be guided by the six factors." S*peed v. JMA Energy Co., LLC*, 872 F.3d 1122, 1128 (10th Cir. 2017) (citations omitted). This case presents an unusual application of these factors because, unlike most cases that consider the discretionary exception, it was originally filed in federal district court and Delta Dental, as the defendant, seeks dismissal. Further, class actions are not cognizable in Virginia state court, which raises the question of Plaintiffs' available redress if this case is dismissed from federal court. *See e.g. Casey v. Merck & Co.*, 722 S.E.2d 842, 846 (Va. 2012) ("Virginia jurisprudence does not recognize class actions."). Therefore, I carefully consider each factor in turn.

**i. National Interest**

The national interest factor directs the Court to consider "whether the interests of justice would be violated by a state court exercising jurisdiction over a large number of out of state citizens and applying the laws of other states." *Preston*, 485 F.3d at 822. Plaintiffs argue that this case involves matters of national or interstate interest because the data breach affected nearly

150,000 individuals who reside in all fifty states and United States territories and military bases. Dkt. 54 at 16. Delta Dental argues that claims involving Virginia law and primarily Virginia citizens do not implicate national or interstate interest. Dkt. 49 at 7.

"National interest" is not defined by statute. Courts look to several different indicators to determine if a case implicates a national or interstate interest. First, the fact that the Complaint pleads only state law claims may suggest that the case does not implicate a national interest. *See Wilkins*, 823 F. Supp. 3d at 624; *Bryant*, 2023 WL 8437228 at *6.

Second, courts examine the citizenship of the proposed class. Several district courts have held that fact that a data breach class action involves citizens from every state does not create a national interest. *See Rosario v. PIH Health, Inc.*, No. LA CV21-07221, 2024 WL 4655362, at *6 (C.D. Cal. Sept. 27, 2024), *aff'd sub nom. Rosario v. PIH Health, Inc*, No. 24-6673, 2026 WL 371404 (9th Cir. Feb. 10, 2026); *In re Fred Hutchinson Data Sec. Litig.*, No. 2:23-CV-01893, 2024 WL 1240681, at *7 (W.D. Wash. Mar. 22, 2024) ("Considering the likelihood that most affected class members reside in Washington, factor one favors remand"); *Griffiths v. Kootenai Health, Inc.*, No. 2:24-CV-00205, 2026 WL 821159, at *5 (D. Idaho Mar. 25, 2026) (holding that a data breach does not create a national interest because "this case concerns a single cyber incident allegedly suffered by a single Idaho healthcare provider."). However, the Eastern District of Pennsylvania recently held that when approximately 50% of the proposed class were citizens of the forum state, the national interest factor is neutral. *Crunch Logistics Inc. v. Donegal Ins. Grp.*, No. 5:21-CV-00639, 2021 WL 2400721, at *4 (E.D. Pa. June 11, 2021), *dismissed sub nom. Crunch Logistics Inc. v. Donegal Ins. Grp.*, No. 21-2295, 2024 WL 6047250 (3d Cir. Oct. 30, 2024).

Third, some courts have looked at the prevalence of the kind of claim and national attention to the issue to determine national interest. Several district courts addressing violations of New York Labor Law in classifying unpaid interns held that these cases implicated a national interest. The district courts reasoned that the "[u]se of unpaid college interns by companies like Defendants is commonplace and court cases like this have garnered national media attention." *Fields v. Sony Corp. of Am.*, No. 13 CIV. 6520, 2014 WL 3877431, at *5 (S.D.N.Y. Aug. 4, 2014); *Ramirez v. Oscar De La Renta*, LLC, No. 16-CV-7855, 2017 WL 2062960, at *8 (S.D.N.Y. May 12, 2017). Conversely, other district courts have held that when the claims fundamentally involve local activities, media attention and interested out of state parties do not create a national interest. *Doe v. Georgetown Synagogue-Kesher Israel Congregation*, 118 F. Supp. 3d 88, 98 (D.D.C. 2015).

Fourth, the Senate Judiciary Committee Report suggests that a case may implicate a national interest if it has a likely interface with federal laws "even if claims are not filed directly under such laws." S. Rep. 109-14 at 36 (2005). However, if the claims involve "traditional areas of state law regulation," the fact of concurrent state and federal regulation does not create a matter of national interest. *Gaska v. DARCARS of Railroad Avenue, Inc.*, 673 F. Supp. 3d 157, 170 (D. Conn. 2023). In *Speed*, the Tenth Circuit found that claims based on "a defective pharmaceutical product placed by a manufacturer into the stream of commerce, causing physical harm to downstream plaintiffs in many States who may have little or no connection with the forum State" could implicate a national interest. 872 F.3d at 1129–30. However, that court clarified that when the plaintiffs "purposefully availed themselves of [the state] and its laws," the facts of federal regulatory interest and a large number of out of state plaintiffs do not implicate a national interest. *Id*. at 1130.

Considering these indicators, I find that the national interest factor is neutral in this case. The size of the class and prevalence of data breach cases weigh in favor of finding a national interest. As to the size and geographic distribution of the class, CAFA jurisdiction applies to ensure that state judges do not exercise jurisdiction over a large number of out-of-state citizens and apply the laws of other states. *Preston*, 485 F.3d at 822. As in *Crunch*, this case "run[s] through the midline of the [citizenship] distribution of class actions to which § 1332(d) applies." 2021 WL 2400721 at *4. The *Crunch* court found that this geographic distribution rendered the national interest factor neutral. *Id*. In *Wilkins*, the proposed class included 6,704 current and former employees residing in 37 different states, 3,700 of whom resided in Virginia. 823 F. Supp. 3d at 624. By contrast, the proposed class in this case includes 145,918 individuals. Dkt. 44 ¶ 7. Of that number, Delta Dental has identified that 78,762 individuals whose citizenship is unknown or are presumptively citizens of other states. Dkt. 48-2 ¶¶ 4–5. Therefore, declining federal jurisdiction would require the state courts to exercise jurisdiction over up to 78,762 out of state residents spread across all fifty states—many more than involved in *Wilkins*. CAFA was designed to prevent such a result.

Further, like the issues implicated in *Fields* and *Ramirez*, data breach cases have garnered national media attention and have been repeatedly addressed by federal courts and law enforcement. *See* Dkt. 44 ¶¶ 60 ("[C]yberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack."). In October 2025, the Fourth Circuit took a stance on a growing circuit split addressing standing in data breach cases. *See Holmes*, 156 F.4th at 426 n.11. Although not dispositive, the prevalence of and attention to these cases suggests a national interest.

On the other hand, this case alleges state law causes of action for harms that occurred in Virginia and does not implicate federal law. Courts in the Fourth Circuit have routinely found that state law claims do not implicate a national interest. *Wilkins*, 823 F. Supp. 3d at 624. Tort and contract law are traditional areas of state regulation, and the proposed class members purposefully availed themselves of the forum by obtaining insurance from Delta Dental. *See Preston*, 485 F.3d at 822 (holding that the plaintiffs' negligence claims did not involve a national interest, even though the case arose out of delayed evacuation during Hurricane Katrina, a matter of national interest). Further, as in *Wilkins*, the alleged injury occurred due to information exfiltrated from Delta Dental's servers, which are located in Roanoke, Virginia. These indicators suggest a local, not national, interest.

I find that, on these particular facts, the competing indicators render the national interest factor neutral. Although Virginia has a clear nexus to the claims, potential state jurisdiction over more than 75,000 out of state individuals implicates the concerns CAFA was designed to address.

**ii. Governing Law**

The state law governance factor weighs in favor of dismissal when claims are brought under forum state law. 28 U.S.C. § 1332(d)(3)(B). Plaintiffs bring claims for negligence, breach of contract, unjust enrichment, and violations of the Virginia Consumer Protection Act. Dkt. 44 ¶¶ 275–353. As these claims are governed by Virginia law, the state law governance factor weighs in favor of dismissal.

**iii. Avoidance of Federal Jurisdiction**

The avoidance of federal jurisdiction factor weighs in favor of retaining jurisdiction when a plaintiff seeks to evade federal jurisdiction. 28 U.S.C. § 1332(d)(3)(C). Plaintiffs filed this action in federal court, so the Complaint was not pled to avoid federal jurisdiction. When the

complaint is not filed to avoid federal jurisdiction, courts have split as to how this factor is weighed. *Compare Wilkins*, 823 F. Supp. 3d at 625 (holding that because the action was filed in federal court, the third factor is neutral or weighs in favor of federal jurisdiction) *with Evans v. Enterprise Products Partners, LP*, 426 F. Supp. 3d 397, 407 (S.D. Tex. 2019) (holding that because the plaintiffs did not plead the case to avoid federal jurisdiction, the third factor weighs in favor of remand) *and Bowen v. Houser*, No. CA 3:10-02398, 2011 WL 380455, at *9 (D.S.C. Feb. 3, 2011) (same). Because this factor is designed to punish plaintiffs who artfully plead to avoid federal jurisdiction, it is not well suited to the posture of this case. In the typical case, "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 265–66 (1981). Because Plaintiffs did not seek to avoid federal jurisdiction in this case, and this Court has original jurisdiction under CAFA, the ordinary presumption in favor of Plaintiffs' choice of forum applies. Therefore, this factor weighs slightly in favor of retaining jurisdiction.

**iv. Nexus**

The nexus factor, 28 U.S.C. § 1332(d)(3)(D), requires that the Court consider "whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants." As a threshold matter, the Court must define the relevant "forum" referenced in the nexus factor. Courts in the Fourth Circuit have generally construed "forum" to mean the State where the action was originally filed. *See Wilkins*, 823 F. Supp. 3d at 625; *Bryant*, 2023 WL 8437228 at *6. Other federal courts also use the term "forum" to reference "both the local [state] court division and the State as a whole." *Speed*, 872 F.3d at 1135.

However, it is important to distinguish this case from most other cases applying the discretionary exception. In most instances, the case was originally filed in state court, removed

by the defendant, and the plaintiffs seek to remand the case to state court. *See, e.g.*, *Preston*, 485 F.3d at 808; *Bowen*, 2011 WL 380455 at *1; *Bryant*, 2023 WL 8437228 at *1. In *Speed*, a removal case, the Tenth Circuit found that the relevant forum was the State where the action was originally filed, not the specific county. 872 F.3d at 1135. The Tenth Circuit declined to distinguish between the State and counties within the State because "the choice before the district court is between federal jurisdiction and state jurisdiction," and "[t]he [federal] court cannot require that the State choose a particular venue within its boundaries." *Id*. In this case, unlike in *Speed*, determination of the relevant forum presents a choice between federal jurisdiction and state jurisdiction. Courts that have addressed the discretionary exception when the case was originally filed in federal court have not examined the potential ambiguity in the statutory text. Instead, in conclusory fashion, they held that the State is the relevant forum. *See Wilkins*, 823 F. Supp. 3d at 625 ("Virginia has a distinct nexus to this case."); *Conley v. Fordham Univ.*, No. 23-CV-05962, 2025 WL 1380683, at *5 (S.D.N.Y. May 12, 2025) ("[T]he Nexus Factor also weighs in favor of dismissing this action, given that 50% of the putative class members are New York residents, Fordham's two campuses are located in New York state . . ., and the core issue in this action is Fordham's response to Executive Orders issued by New York's Governor."). I find that further analysis of the statutory text is needed to determine the relevant forum.

Black's law dictionary defines "forum" as "[a] court or other judicial body; a place of jurisdiction." Forum, Black's Law Dictionary (12th ed. 2024). Applying this definition, the relevant forum referenced in the nexus factor is the court where the original action was filed, or else the district or county of filing. Context further supports this interpretation. The statute refers to the "State" in several other provisions but does not do so here. *See, e.g.*, 28 U.S.C. § 1332(d)(3)(E) ("The number of citizens of the *State* in which the action was originally filed."

(emphasis added)). The legislative history also supports a conclusion that the nexus factor references the judicial district or county where the action was originally filed. The Senate Report explains that the nexus provision is designed to account for "the filing of lawsuits in out-of-the-way 'magnet' state courts that have no real relationship to the controversy at hand." S. Rep. 109-14 at 37 (2005). Further, the legislative history directs the Court to consider whether "the majority of proposed class members and the defendant reside in the *county* where the suit is brought." *Id*. (emphasis added). Therefore, based on the statutory language, context, and legislative history, Congress intended the Court to consider the nexus between the county or district where the action was filed and the claims at issue. In this case, the relevant forum is the Western District of Virginia.

Having determined the relevant forum, the Court must consider whether the Western District of Virginia has a "distinct nexus" to the controversy. Distinct nexus is not defined by the statute. However forum is defined, courts have generally found that there is a sufficient nexus if the harm occurred in the forum or if a large portion of the class resides in the forum. *See Wilkins*, 823 F. Supp. 3d at 625 (alleged harm occurred in Virginia); *Preston*, 485 F.3d at 823 (conduct alleged occurred in Louisiana); *Bowen*, 2011 WL 380455 at *9 (large portion of the class and the defendants were from South Carolina). The Senate Report explains that the Court may find a distinct nexus if (1) a majority of the proposed class members live in the relevant forum or (2) the selected forum's nexus is not shared by many other forums. S. Rep. 109-14 at 37 (2005). Generally, the nexus factor is designed to prevent forum shopping that would allow for a defendant to be sued in an unrelated state forum that may be biased against an out of state defendant and may allow for easier class certification than would be permitted by a federal court. *Id*.

The Western District of Virginia has a nexus with this case, but not a distinct nexus. The harm occurred in the Western District of Virginia because hackers exfiltrated Plaintiffs' Private Information from Delta Dental systems in Roanoke, Virginia. Delta Dental also resides in the Western District of Virginia. On the other hand, only 46% of the class resides in Virginia, and it is not clear what portion of that number resides in the Western District. The Senate Report notes that if "some allegedly injured parties live in the locality, just as allegedly injured parties live in many other localities, the nexus is not distinct." S. Rep. 109-14 at 37 (2005) (cleaned up). Although cases finding a distinct nexus rely in part on the defendant's citizenship and the place of the harm, those cases typically involved smaller proposed classes and a majority of in-state residents. *Wilkins*, 823 F. Supp. 3d at 619, 625 (holding that at least 55% of the 6,700 proposed class members were presumptive citizens of Virginia); *Bowen* 2011 WL 380455 at *7 (holding that the evidence showed that approximately 60% of the 408 proposed class members resided in South Carolina). Here, the proposed class is significantly larger and, based on the evidence presented, the Court cannot conclude that a majority of the proposed class lives in Virginia, much less the Western District of Virginia. Further, "allegedly injured parties live in many other localities." S. Rep. 109-14 at 37 (2005) Therefore, the Western District of Virginia does not have a distinct nexus to the controversy.

Having determined that the Western District of Virginia has some nexus to the controversy, even if not a distinct nexus, the remaining issue is whether the nexus weighs for or against the exercise of jurisdiction. The nexus factor is designed to prevent filing in magnet state courts that are ill-equipped to handle class actions and/or biased against out of state defendants. S. Rep. 109-14 at 37 (2005). "If the selected forum's nexus to the controversy is shared by many other forums . . . this factor would in that circumstance weigh heavily in favor of the exercise of

federal jurisdiction." *Id*. Given these considerations, I find that the nexus factor weighs in favor of the exercise of federal jurisdiction. In general, the main purpose of the nexus factor—to avoid magnet state courts from exercising jurisdiction inappropriately—is not implicated in this case. The nexus factor also considers the geographic distribution of the proposed class and suggests that the factor should weigh in favor of federal jurisdiction when, as here, the injured parties are located in many different localities. Therefore, the nexus factor weighs in favor of the exercise of federal jurisdiction.

**v. Citizenship of the Proposed Class**

The citizenship factor weighs in favor of dismissal if (1) the number of citizens of the State in which the action was filed is substantially larger than the number of citizens from any other state and (2) the citizenship of the out of state proposed class members is dispersed among a substantial number of states. 28 U.S.C. § 1332(d)(3)(E). Defendants provided residency information for 104,584 potential class members, approximately 72% of the class. Dkt. 48-2 ¶ 4. Of those proposed class members, 67,156 reside in Virginia. *Id*. ¶ 5. There are 4,384 proposed class members known to reside in North Carolina, which is the next most numerous state of residency. *Id*. ¶ 5dd. Plaintiffs argue that "only a plurality of the proposed Class resides in Virginia" because the 67,156 known Virginia residents make up only 46% of the class. Dkt. 54 at 16. The fact that only a plurality of class members reside in Virginia is immaterial. The Court cannot credit speculation that a large portion of the class whose citizenship is unknown resides in a single state other than Virginia. The evidence before the Court is that (1) the number of Virginia citizens is substantially greater than the number of citizens from every other state and (2) the citizenship of the rest of the class is dispersed among all other states. Therefore, this factor weighs in favor of dismissal.

### vi. Other Class Actions Filed

The related cases factor weighs in favor of retaining jurisdiction if, during the previous three years, other class actions asserting the same or similar claims have been filed. 28 U.S.C. § 1332(d)(3)(F). The parties do not dispute that five other parallel class actions were filed in the Western District of Virginia in the previous three years. Rather, they dispute whether the filing of these other cases should weigh for or against dismissal. Plaintiff argues that this factor weighs against dismissal by the mere fact of filing. Delta Dental argues that, because these cases were all filed in the Western District of Virginia, this factor weighs in favor of dismissal. Dkt. 55 at 8.

The purpose of the related cases factor is to retain federal jurisdiction where there are multiple cases filed in different states or districts "so that the claims of all proposed classes could be handled efficiently on a coordinated basis pursuant to the federal courts multidistrict litigation process established by 28 U.S.C. § 1407." S. Rep. No. 109-14, at 38 (2005). The multidistrict litigation process governs cases in which civil actions "involving one or more common question of fact are pending in *different districts*." 28 U.S.C. § 1407 (emphasis added). The Senate Report further counsels that remand may be appropriate if "the state court appears positioned to handle the case in a manner that is respectful to state law variations." S. Rep. No. 109-14, at 38 (2005). Courts disagree about the impact of parallel cases when they have been consolidated into the instant case. *Compare Griffiths*, 2026 WL 821159 at *5 (holding that because the related class actions were consolidated into the instant action, the related cases factor weighs in favor of dismissal) *with In re Fred Hutchinson*, 2024 WL 1240681 at *9 (holding that, although the related class actions were consolidated, "[b]ecause multiple putative class actions have been filed alleging the same or similar claims related to the data breach, this factor favors denying remand.").

I find that the related cases factor weighs slightly in favor of dismissal. Federal courts should retain jurisdiction when multidistrict litigation would be appropriate in the case. One problem the CAFA was designed to address is duplicative class action litigation in state courts. Because class actions filed in different states cannot be consolidated, "[t]he result is enormous waste—multiple judges of different courts must spend considerable time adjudicating precisely the same claims asserted on behalf of precisely the same people." S. Rep. No. 109-14, at 38 (2005). In this case, the related cases were all filed in the Western District of Virginia and consolidated into the instant case. Therefore, the potential for multidistrict litigation in federal court and the problem of duplicative cases in different state courts is not implicated by the multiple filings. Therefore, this factor weighs slightly in favor of dismissal.

**vii. Interests of Justice and the Totality of the Circumstances**

The Court is directed to consider whether the six discretionary exception factors weigh in favor of remand "in the interests of justice and looking at the totality of the circumstances." 28 U.S.C. § 1332(d)(3). Many courts do not address these considerations separately, but use them to guide consideration of the six factors. However, the unique posture of this case requires additional analysis of the "totality of the circumstances."

The discretionary exception is typically invoked by plaintiffs seeking to remand their case to state court. However, "CAFA's mandatory and discretionary exceptions apply equally to cases removed from state court and those originally filed in federal court." *Wilkins*, 823 F. Supp. 3d at 622 n.4. CAFA was enacted in part to allow defendants to remove class actions to federal court "where the threat of prejudice is significantly lower." S. Rep. 109-14 at 26 (2005). In this case, dismissal, purportedly for adjudication in state court, is even more favorable to Delta Dental than the exercise of federal jurisdiction because Virginia does not have a class action

procedure. In other states, following dismissal from federal court, plaintiffs generally can still litigate the class action in state court. That option is unavailable to Virginia plaintiffs.

This omission in Virginia law is relevant to the totality of the circumstances. "Class actions were designed to provide a mechanism by which persons, whose injuries are not large enough to make pursuing their individual claims in the court system cost efficient, are able to bind together with persons suffering the same harm and seek redress for their injuries." S. Rep. 109-14 at 4 (2005). This case is well-suited to class action litigation, because many class members may suffer only minimal harms by misuse of their Private Information. Practically, dismissal in federal court, without an available state court forum, would wholly deprive some Plaintiffs of a remedy. As defense counsel argued, this consideration is not accounted for in the six discretionary exception factors. However, I find that the lack of an available alternative forum dictates that the interests of justice, insofar as it is examined as an independent factor, weighs in favor of retaining jurisdiction.

In sum, three factors weigh slightly in favor of dismissal, two factors weigh in favor of retaining jurisdiction, and one factor is neutral. The interests of justice in the totality of the circumstances weigh in favor of retaining jurisdiction, as does the general practice of adhering to Plaintiffs' chosen forum. Although this is a close case, the Court exercises its discretion in light of the discretionary exception factors and will retain jurisdiction.

C. <u>Failure to State a Claim</u>

Finally, Delta Dental argues that Plaintiffs fail to state a claim. Having found that Plaintiffs lack standing to seek injunctive and declaratory relief, I address Plaintiffs' five remaining causes of action in turn.

*1. Count I: Negligence*

Plaintiffs allege that Delta Dental breached its duty to protect their Private Information, which caused compensable harm. To establish a common-law negligence claim, a plaintiff must plead "the existence of a legal duty, violation of that duty, and proximate causation which results in injury." *Collett v. Cordovana*, 772 S.E.2d 584, 588 (Va. 2015) (quoting *Delk v. Columbia/HCA Healthcare Corp.*, 523 S.E.2d 826, 830 (Va. 2000)). Delta Dental argues that Plaintiffs fail to properly plead any of these elements, although its briefs do not address breach.

The existence of a duty is a question of law. *Kellerman v. McDonough*, 684 S.E.2d 786, 790 (Va. 2009). Delta Dental argues that Virginia has not recognized a common law duty for businesses to protect their customer's personal information, and, alternatively, that Delta Dental did not have an obligation to protect Plaintiffs from the criminal acts of third parties. Dkt. 49. Plaintiffs argue that Delta Dental had assumed a duty to protect Plaintiffs' Private Information.

Delta Dental is correct that Virginia has not recognized a common law duty for businesses to protect Private Information. *Mgaresh v. Virginia Union Univ.*, No. 3:24-CV-337, 2025 WL 641432, at *3 (E.D. Va. Feb. 27, 2025). However, Virginia law recognizes a duty of reasonable care when the defendant "undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things." *Burns v. Gagnon*, 727 S.E.2d 634, 644 (Va. 2012) (quoting Restatement (Second) of Torts § 324A (1965)). The Eastern District of Virginia, applying Virginia law, held that a company's solicitation of customers' private information and manifestations that their private information would be protected was sufficient to allege a duty under the voluntary undertaking doctrine. *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 400 (E.D. Va. 2020); *Mgaresh* 2025 WL 641432 at *3–4.

The facts of this case are sufficiently similar to those in *In re Capital One* to plausibly allege that Delta Dental owed a duty to protect Plaintiffs' Private Information. Here, Plaintiffs allege that Delta Dental solicited and stored their Private Information to provide its services. Dkt. 44 ¶ 30. Plaintiffs also allege that Delta Dental assured its customers that their information would be adequately protected. *Id.* ¶ 31. Delta Dental assumed the duty of reasonable care in its maintenance of Plaintiffs' Private Information. As Delta Dental owed a duty to Plaintiffs, it is immaterial that it did not have a duty to protect Plaintiffs from the acts of third parties. *See Kellerman*, 684 S.E.2d at 793.

"Issues of negligence and proximate causation are ordinarily questions of fact for the jury's determination. A court decides these issues only when reasonable persons could not differ." *Dorman v. State Industries*, 787 S.E.2d 132, 138 (Va. 2016) (quoting *Atkinson v. Scheer*, 508 S.E.2d 68, 71 (Va. 1998)). Plaintiffs allege that Delta Dental breached its duty by "systematically fail[ing] to provide adequate data security," specifically "[i]nadequate segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing." Dkt. 44 ¶¶ 289, 305. Delta Dental does not explicitly address breach in its briefs. At this stage, the Complaint adequately alleges that Delta Dental breached the standard of reasonable care.

"The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." *Beverly Enterprises-Virginia v. Nichols*, 441 S.E.2d 1, 4 (Va. 1994) (quoting *Coleman v. Blankenship Oil Corp.*, 267 S.E.2d 143, 147 (Va. 1980)). Although not raised in its motion to dismiss, Delta Dental argues in its reply that "Plaintiffs make no allegations whatsoever that would allow the Court to link exposure of Harrington's Social

Security number and dental insurance policy number to her purported harm." Dkt. 55 at 19. As I addressed in analyzing traceability, Plaintiffs' have alleged that (1) the data breach exposed Harrington's Social Security number to hackers and (2) hackers used that Social Security number to obtain her banking information and make fraudulent charges. Whether an intervening exposure of private information caused the fraudulent charges is a question properly left to the jury. Plaintiffs plausibly allege proximate cause in this case.

Damages must be established with reasonable certainty. *Miller v. Johnson*, 343 S.E.2d 301, 307 (VA. 1986) (citations omitted). Delta Dental argues that Plaintiffs' damages are speculative and therefore do not meet this burden. I disagree. First, Harrington alleges actual misuse of her Private Information resulting in fraudulent bank charges of $4,000 in May 2025 and $69.99 in January 2026. Dkt. 44 ¶¶ 193–94. As actual misuse provides her standing, Harrington may also recover compensatory damages for mitigation costs and emotional distress. *Holmes*, 156 F.4th at 433 n.24; *see also A.H. by next friends C.H. v. Church of God in Christ, Inc.*, 831 S.E.2d 460, 479 (Va. 2019) (holding that if successful on her negligence claim, the plaintiff may recover compensatory damages, including damages for emotional distress). These damages are specifically pled in the Complaint. As Plaintiffs have plausibly alleged each element of negligence, Delta Dental's motion to dismiss Plaintiff's negligence claim (Count I) is denied.

*2. Count II: Negligence Per Se*

Plaintiffs bring a claim for negligence per se, alleging that Delta Dental violated the FTC Act and HIPAA. Dkt. 44 ¶ 307. Under Virginia law, a claim for negligence per se does not create a separate cause of action from negligence, but "suppl[ies] a new standard for determining whether the defendants performed their common law duty of ordinary care." *Butler v. Frieden*, 158 S.E.2d 121, 124 (Va. 1967); *see also A.H*, 831 S.E.2d at 475 ("[N]egligence per se only

exists '*where there is a common-law cause of action*.'" (quoting *Parker v. Carilion Clinic*, 819 S.E.2d 809, 824 (Va. 2018) (emphasis in original)). "The standard of conduct of a 'reasonable man' in a negligence case is generally determined by a jury on a case-by-case basis. Under the doctrine of negligence per se, however, the violation of a statute or ordinance can constitute a violation of the 'reasonable man' standard as a matter of law." *Talley v. Danek Medical, Inc.*, 179 F.3d 154, 158 (4th Cir. 1999). Indeed, the Virginia Supreme Court acknowledged in *Evans v. Evans* that "[t]he doctrine of negligence per se represents the adoption of 'the requirements of a legislative enactment as the standard of conduct of a reasonable [person]'" 695 S.E.2d 173, 177 (Va. 2010) (internal citations omitted). "[T]he doctrine of negligence per se does not create a cause of action where none otherwise exists." *Williamson v. Old Brogue, Inc.*, 350 S.E.2d 621, 624 (Va. 1986); *Parker*, 819 S.E.2d at 825 ("The effect of the doctrine of 'negligence per se,' when applicable, is that it establishes the second element of common law negligence – breach of duty – by reference to a statutory standard.").

Although Plaintiffs style Counts I and II as separate causes of action, negligence per se is simply a doctrine by which one can show breach in a negligence action. As a result, the Court considers the allegations in these counts as stating one substantive cause of action for negligence. Whether Plaintiffs can rely on the doctrine of negligence per se to establish that Delta Dental breached its duty of care is reserved for summary judgment or trial. A Rule 12(b)(6) motion challenges whether Plaintiffs have plausibly alleged a claim and since the doctrine of negligence per se is not a separate claim, it is not a proper subject of a 12(b)(6) motion. *Walker v. Brooks Pub. Safety, LLC*, 707 F. Supp. 3d 590, 600 n.5 (W.D. Va. 2023) (holding that an element of a claim is not subject to dismissal under Rule 12(b)(6)); *Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*, 21 F. Supp. 3d 620, 631 (W.D. Va. 2014) ("[A] plain reading of Rule 12(b)(6)

indicates that the rule may be used only to dismiss a 'claim' in its entirety." (internal citations omitted)). Accordingly, because the negligence per se claim is not a separate cause of action from negligence, it is dismissed without prejudice.

*3. Count III: Breach of Implied Contract*

Plaintiffs allege that Delta Dental breached an implied contract to protect their Private Information and to timely notify them in the event of a data breach. Dkt. 44 ¶ 313. Absent an express contract, the law will sometimes imply a contract to avoid injustice. *RehabCare Grp. E., Inc. v. BROC L.L.C.*, No. 4:17-CV-00043, 2018 WL 1935869, at *4 (W.D. Va. Apr. 24, 2018). Virginia law distinguishes between two types of implied contracts: contracts implied-in-law and contracts implied-in-fact. "An implied-in-fact contract is an actual contract that was not reduced to writing, but the court infers the existence of a contract from the conduct of the parties." *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 166 (4th Cir. 2012). Under Virginia law, an implied-in-fact contract requires "the typical requirements to form a contract . . . such as consideration and mutuality of assent," demonstrated by the parties' acts and conduct. *Spectra-4, LLP, v. Uniwest Commercial Realty, Inc.*, 772 S.E.2d 290, 295 (Va. 2015) (citing *City of Norfolk v. Norfolk Cnty.*, 91 S.E. 820, 821–22 (Va. 1917)). Therefore, Plaintiffs must establish "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Ramos v. Wells Fargo Bank, NA*, 770 S.E.2d 491, 493 (Va. 2015) (quoting *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)).

In *Mgaresh*, the Eastern District of Virginia found that the plaintiffs plausibly pled an implied-in-fact contract claim under similar circumstances. In that case, "Plaintiffs provided application fees and their PII to VUU, and in exchange, VUU promised to (1) process the

Plaintiffs' applications, (2) protect their PII from unauthorized persons, and (3) provide Plaintiffs with prompt notice if their PII was compromised." *Mgaresh*, 2025 WL 641432 at *7. Finding that the plaintiffs plausibly alleged that the defendant breached these agreements to the plaintiffs' detriment, the Eastern District declined to dismiss the plaintiffs' breach of implied contract claim. *Id.* By contrast, in *Lugo v. Inova Health Services*, the Eastern District held that, because the privacy notice at issue merely explained the defendant's legal duties, it was insufficient to show consideration. No. 1:24-CV-700, 2025 WL 905191, at *3 (E.D. Va. Mar. 25, 2025). Further, the court held that because the plaintiff did not have to communicate or assent to the privacy agreement to use the defendant's services, the plaintiff failed to allege mutual assent to the contract terms. *Id*. at *3–4.

The facts of this case are more similar to those in *Mgaresh*. First, Plaintiffs allege a legally enforceable obligation. Specifically, that Delta Dental agreed to "employ reasonable safeguards designed to promote the security of our systems and protect [their] personal information" and stated that it would not share Plaintiffs private information. Dkt. 44 ¶¶ 31 nn. 9–10; *see also Id*. ¶ 316 ("Defendant's implied promise to safeguard Private Information is evidenced by, *e.g.*, the representations in its Privacy Policies."). Based on these allegations, Delta Dental's Privacy Policies did more than explain its legal duties but rather promised to safeguard Plaintiffs' Private Information. *Cf. Lugo*, 2025 WL 905191 at *3 ("Such recitation [of the defendant's legal duties] is insufficient to show consideration."). This is sufficient to show a legally enforceable obligation.

Second, Plaintiffs plausibly allege that Delta Dental breached its obligation by "failing to safeguard Plaintiffs' and Class Members' Private Information." Dkt. 44 ¶ 319. The parties agree that Plaintiffs' private information was exposed in the Data Breach. Taking the allegations in the

Complaint as true, Delta Dental failed to employ reasonable safeguards, as its data security standards were inconsistent with industry standards and statutory requirements. *Id.* ¶¶ 92–117. As a result of this breach, Plaintiff Harrington suffered actual misuse of her private information. At this stage, these allegations are sufficient to plausibly allege a breach of implied contract. Delta Dental's motion to dismiss as to Count III is denied.

*4. Count IV: Unjust Enrichment*

In the alternative, Plaintiffs bring a claim for unjust enrichment. Delta Dental argues that Plaintiffs fail to state a claim for unjust enrichment because Delta Dental has not unjustly retained a benefit to Plaintiffs' detriment. Dkt. 49 at 22. "Unjust enrichment claims are a category of implied-in-law contracts." *White v. United Network for Organ Sharing*, No. 3:24CV629, 2025 WL 2656044, at *13 (E.D. Va. Sept. 16, 2025). Unlike a contract implied-in-law, unjust enrichment is not a contract action but a remedy imposed by the court. *Doe v. Washington & Lee Univ.*, 439 F. Supp. 3d 784, 791 (W.D. Va. 2020). A claim for unjust enrichment requires that (1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit and should reasonably have expected to pay for it; and (3) the defendant accepted the benefit without paying for it. *Schmidt v. Household Finance Corp.*, II, 661 S.E.2d 834, 838 (Va. 2008). Importantly, the plaintiff must "raise an implication that the defendant promised to pay the plaintiff for such benefit." *Nedrich v. Jones*, 429 S.E.2d 201, 207 (Va. 1993).

In *Rosetta Stone*, the Fourth Circuit dismissed the plaintiff's unjust enrichment claim because "Rosetta Stone does not contend, and did not allege, that Google pays any other mark holder" and therefore Google should not have "reasonably expected" to pay Rosetta Stone. 676 F.3d at 166; *see also White*, 2025 WL 2656044 at *14 ("Some level of unfairness, however, is insufficient to sustain a claim of unjust enrichment. Instead, a plaintiff must plausibly allege that

the defendant should have reasonably expected to pay the plaintiff for the benefit conferred.”). By contrast, in *Mgaresh*, the plaintiffs stated a claim for unjust enrichment because the defendant “enriched itself by saving the costs they reasonably should have expended on data security measures.” 2025 WL 641432 at *7.

First, Plaintiffs’ claim fails because although providing their Private Information conferred a benefit, Plaintiffs do not allege that Delta Dental offered, even implicitly, to pay for that benefit. Plaintiffs allege that “Delta Dental benefited from the conferral upon it of Plaintiffs’ and Class Members’ Private Information” and “understood and appreciated that Plaintiffs’ and Class Members’ Private Information was Private and Confidential.” Dkt. 44 ¶¶ 324–25. However, Virginia law requires that Plaintiffs factually allege that Delta Dental agreed to pay Plaintiffs for the benefit conferred by provision of their Private Information. As in Rosetta Stone, Plaintiffs do not allege any such promise, implied or otherwise. The allegations in the Complaint do not suggest that Delta Dental pays other customers in exchange for providing their services. Therefore, Plaintiffs’ claims for unjust enrichment fail as to the second element because there is no reason to believe either party should have expected Delta Dental to repay part of Plaintiffs’ costs for purchasing insurance in the event of a data breach.

Second, even applying the alternative theory for unjust enrichment used in *Mgaresh*, Plaintiffs fail to state a claim for unjust enrichment. Unlike in *Mgaresh*, Plaintiffs do not allege that a portion of the funds paid to Delta Dental were for adequate security measures. Therefore, Plaintiffs fail to state a claim for unjust enrichment as an alternative to their breach of implied contract claim. Delta Dental’s motion to dismiss Count IV is granted.

*5. Count VI: Virginia Consumer Protection Act*

Finally, Plaintiffs allege that Delta Dental violated the Virginia Consumer Protection Act. Delta Dental argues that Plaintiffs fail to state their VCPA claim with the requisite specificity. Dkt. 49; Dkt. 55 at 23–34. In the alternative, Delta Dental alleges that it falls under an exclusion to the VCPA or, further alternatively, Delta Dental is not a supplier within the meaning of the VCPA.

The VCPA is designed to "promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code § 59.1-197. The VCPA prohibits a long list of fraudulent acts, including "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits" and "[u]sing any other deception, deception, fraud, false pretense, or misrepresentation in connection with a consumer transaction." Va. Code § 591.1-200(A)(5), (14). "The VCPA creates a new, statutory cause of action distinct from and in addition to common law fraud" and the elements of the two claims are different. *Ballagh v. Fauber Enters., Inc.*, 773 S.E.2d 366, 368 (Va. 2015). "To state a claim under the VCPA, a plaintiff must allege: '(1) a fraudulent act (2) by a supplier (3) in a consumer transaction.'" *Student A v. Liberty Univ., Inc.*, 602 F. Supp. 3d 901, 917 (W.D. Va. 2022) (quoting *BHR Recovery Cmtys., Inc. v. Top Seek, LLC*, 355 F. Supp. 3d 416, 424 (E.D. Va. 2018)). Courts in the Western District of Virginia, applying Virginia law have held that at the pleading stage, it is sufficient to "identify the defendant corporate entity and provide general allegations of when and where the misrepresentations were made." *Fravel v. Ford Motor Company*, 973 F. Supp. 2d 651, 656 (W.D. Va. 2013).; *Scott v. GMAC Mortgage, LLC,* 3:10CV00024, 2010 WL 3340518, at *3 (W.D. Va. Aug. 25, 2010).

As the VCPA requires a lower burden than common law fraud, a plaintiff must plead (1) a false representation; (2) of a material fact; (3) reasonable reliance thereon; and (4) resulting damage. *Owens v. DRS Automotive Fantomworks, Inc.*, 764 S.E.2d 256, 260 (Va. 2014). "The VCPA clearly does not require the consumer to prove in every case that misrepresentations were made knowingly or with the intent to deceive, because of its additional provision that damages may be trebled, but only in cases where the court finds that the violation was "willful." *Id.*; Va. Code § 59.1-204(A).

Plaintiffs allege that Delta Dental "knowingly made false or misleading statements in its Privacy Policy regarding the use of personal information submitted by members of the public in that Defendant advertised it is committed to protecting privacy and securely maintaining personal information," but did not securely maintain personal information. Dkt. 44 ¶ 350. Plaintiffs further allege that Delta Dental's omissions and misrepresentations were material because "they were likely to deceive reasonable customers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Private Information." *Id.* ¶ 341. As Plaintiffs provided confidential, sensitive information, including their Social Security numbers and health information to Delta Dental, it is reasonable to conclude that misrepresentations about Delta Dental's data security are material. Further, taking the allegations in the Complaint as true, Delta Dental did not employ reasonable data security safeguards as advertised—its safeguards were statutorily inadequate and well below industry standard. *Id.* ¶¶ 92–117. The court is skeptical that Plaintiffs' allegations of false or misleading statements are

sufficient to prove violations of the VCPA; however, for purposes of this motion, the court concludes that these allegations plausibly state misrepresentations of a material fact.[6]

However, Plaintiffs fail to allege reasonable reliance on Delta Dental's misrepresentations. Although Plaintiffs allege that Delta Dental's Privacy Policies misrepresented their data security practices, they do not allege that any named Plaintiff relied upon or even read the Privacy Policies. *See Fravel*, 973 F. Supp. 2d at 658 ("[L]acking any allegation that she relied on the misrepresentation or omission on the party [sic] of Ford, Fravel has failed to state a claim under the VCPA."). The court also notes that "insurance companies regulated and supervised by the State Corporation Commission or a comparable federal regulating body" are specifically excluded from the VCPA. Va. Code § 59.1-199. Therefore, Delta Dental's motion to dismiss is granted as to Count VI.

## IV. Conclusion

Plaintiff Harrington alleges a cognizable injury in fact that is fairly traceable to Delta Dental's data breach. Therefore, the class has standing to pursue this action for damages. Because the possibility of future harm does not provide standing for injunctive relief, Plaintiffs do not have standing to pursue injunctive relief. Considering the interests of justice, in light of the enumerated factors in the discretionary exception to CAFA jurisdiction, the Court will decline from abstaining from hearing this case. Finally, Defendants' motion to dismiss for failure

[6] The Court draws no conclusions at this stage whether promises or representations in Delta Dental's Privacy Policies are sufficient to prove fraud in a VCPA claim without evidence that Delta Dental knew that it could not or would not protect the private information of its policyholders. "Virginia law 'distinguishes between a statement that is false when made and a promise that becomes false only when the promisor later fails to keep his word. The former is fraud, the latter is breach of contract.'" *City of Richmond v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 447 (4th Cir. 1990) (quoting *Lissmann v. Hartford Fire Ins. Co.*, 848 F.2d 50, 53 (4th Cir. 1988)).

to state a claim is **GRANTED IN PART** and **DENIED IN PART**. Because Plaintiffs have plausibly stated a claim for negligence (Count I) and breach of implied contract (Count III), Delta Dental's motion to dismiss is **DENIED** as to those counts. Plaintiffs' negligence per se claim (Count II) does not state a separate cause of action and therefore is **DISMISSED** without prejudice. Plaintiffs also fail to state a claim for unjust enrichment (Count IV) and violations of the VCPA (Count VI), so Delta Dental's motion to dismiss is **GRANTED** and those claims are **DISMISSED** without prejudice. A separate Order shall follow.

It is so **ORDERED**.

Entered: November 24, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge